STATE OF NORTH CAROLINA         IN THE GENERAL COURT OF JUSTICE
COUNTY OF DURHAM                SUPERIOR COURT DIVISION
                                06-CVS-___

                                6CV 00970

ARCHER TRUCKING, INC., DAVID
ARCHER SR., and DAVID ARCHER
JR.
                    Plaintiffs,
                                        COMPLAINT
v.

VECELLIO & GROGAN, INC.,
                    Defendant

NOW COME the Plaintiffs, complaining of Defendants, alleges and says that:

## PARTIES

1. Plaintiff Archer Trucking, Inc. ("Archer") is a corporation organized and existing under the laws of the State of North Carolina.

2. Defendant Vecellio & Grogan, Inc. ("Vecellio" or "Defendant") is a corporation organized and existing under the laws of the State of North Carolina with its principal place of business located at 2251 Robert C. Byrd Dr., Beckley, West Virginia 25802.

3. Julian D. Bobbitt, Jr. is the registered agent for Defendant, with a registered mailing address of P.O. Box 35442, Greensboro, NC 27415.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction over this cause is conferred upon and vested in this Court by the virtue of N.C. Gen. Stat. §§7A-240 and 7A-243.

5. Venue for this action is proper pursuant to N.C. Gen. Stat. §§ 1-79, 80, and 82.



1

## FACTS

6. Archer is a family-owned trucking company located at 803 Archdale Drive, Durham, North Carolina.

7. Archer qualified as a Disadvantaged Business Enterprise ("DBE") through the North Carolina Department of Transportation at all relevant times related to this action.

8. Defendant is a general contractor who entered into a contract with the North Carolina Department of Transportation ("NCDOT") to perform certain labor and furnish material for the construction and completion of the NCDOT Project No. 81402210, US-64 from I-440 (Raleigh Beltline) to New Hope Road, Wake County, North Carolina ("Project").

9. Prior to entering into the contract with the NCDOT, Defendant requested and accepted a bid from Archer for hauling materials, including but not limited to, borrow excavation, when and if Defendant was awarded the Project.

10. Archer's DBE status was used by Defendant in their bid for the Project. Defendant was required to show NCDOT and/or the State that Defendant's bid included a required percentage of work from DBE subcontractors. Defendant used and/or relied on Archer's bid to meet the DBE requirements with the NCDOT and/or the State.

11. Defendant was awarded the contract for the Project.

12. Defendant entered into a contract with Archer on or about August 2, 2002 for the hauling of materials to the Project site. The terms of the contract required Archer to haul all the borrow excavation needed, used or required in the Project.

13. The contract between Defendant and Archer incorporates the contract made between Defendant and the NCDOT for the Project.

2

14. On March 5, 2003, Defendant requested that Archer renegotiate the rates for hauling borrow excavation that had been previously agreed upon in the August 2, 2002 contract. Defendant informed Archer that if Archer failed to agree to change the terms of their contract, Defendant would find another company that would haul the borrow excavation at Defendant's price.

15. Archer did not agree to change the terms of their contract.

16. On July 15, 2003, David Archer, Jr., project manager for Archer, learned that Defendant was using another hauling company, C.C. Mangum, to haul the borrow excavation Archer was awarded pursuant to its contract with Defendant. David Archer, Jr. informed the NCDOT that day regarding Defendant's breach of contract.

17. On September 10, 2003, NCDOT admonished Defendant for using another hauling company to haul the borrow excavation awarded to Archer pursuant to their contract. NCDOT instructed Defendant use Archer to haul all the borrow excavation pursuant to their contract, including the borrow excavation hauled by C.C. Mangum.

18. Upon information and belief, C.C. Mangum hauled at least 31,045 meters of borrow from a location at or around Six Forks Road ("Six Forks Site") that Archer was contracted to haul pursuant to the terms of the contract between Archer and Defendant. This borrow excavation equates to a loss of approximately $145,911.50 for Archer.

19. C.C. Mangum is not a DBE subcontractor.

20. Defendant was required to use a DBE contractor to haul borrow excavation pursuant to their contract with the State.

21. Upon information and belief, after the September 10, 2003 meeting with NCDOT, Defendant entered into an arrangement with C.C. Mangum whereby C.C. Mangum was

3

to pay Archer for the hauling Archer did for Defendant pursuant to their contract. C.C. Mangum's payments were late and in other ways problematic for Archer. Archer contacted Defendant and/or NCDOT to request that Defendant pay Archer directly for work Archer completed for Defendant pursuant to their contract. Defendant denied Archer's request.

22. On or about April 20, 2004, Archer and Defendant met with the NCDOT about the payment problems Archer experienced from C.C. Mangum. NCDOT again admonished Defendant and instructed Defendant to pay Archer directly for the hauling Archer completed pursuant to their contract with Archer.

23. Immediately after the above meeting with the NCDOT, Defendant prevented Archer from hauling any borrow excavation from the Six Forks Site in breach of its contract with Archer. Upon information and belief, the remaining borrow excavation was hauled by C.C. Mangum which caused a significant economic loss to Archer.

24. At some point during Archer's performance of their contract, Defendant was awarded a fuel adjustment from the State or NCDOT for the hauling of borrow excavation, among other items. Upon information and belief, the fuel adjustment awarded to Defendant was required to be paid to the subcontractors under Defendant who were completing the work, such as hauling borrow excavation. Defendant never provided Archer a fuel adjustment after Defendant received a fuel adjustment payment from the NCDOT. Archer's requests for a fuel adjustment for hauling the borrow excavation were denied.

25. As a result of Defendant's breach of their contract with Archer, and their unfair trade practices, Archer has suffered tremendous economic damages.

4

26. Upon information and belief, without Archer's DBE status, Defendant would not have met the DBE requirements for its contract with the NCDOT for the Project.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract and Quasi-Contract against Defendant)

27. Plaintiff re-alleges and incorporates paragraphs 1-26 of its Complaint as if fully set forth herein.

28. Pursuant to the terms of the contract between Archer and Defendant and between Defendant and the State, which was incorporated into the contract between Archer and Defendant, Defendant was required to compensate Archer for all the borrow excavation hauled during the Project.

29. By reason of Defendant's award of a contract for the hauling of borrow excavation to C.C. Mangum, and perhaps other haulers, Defendant prevented Archer from hauling all the borrow on the Project as agreed upon by the parties, which is a material breach of the contract between Defendant and Archer.

30. Defendant received a fuel adjustment increase from NCDOT or the State of North Carolina that should have been transferred to Archer, but was not. When Archer requested their share of the fuel adjustment increase, Defendant denied Archer's request. In addition to the amount of lost profits due to Archer pursuant to their contract with Defendant, Archer is also due its share of the fuel adjustment monies provided by the State.

31. As a direct and proximate result of Defendant's material breaches of the contract with Archer, Archer has sustained severe economic damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

5

## SECOND CLAIM FOR RELIEF
(Unfair and Deceptive Trade Practices against Defendant)

32. Plaintiff re-alleges and incorporates paragraphs 1-31 of its Complaint as if fully set forth herein.

33. Defendant's actions in the case herein, particularly Defendant's repeated breaches of its contract with Archer, amounts to an unfair trade practice pursuant to Chapter 75 of the North Carolina General Statutes.

34. Defendant used Archer's DBE status to receive the contract with NCDOT.

35. Upon information and belief, Defendant never intended to use Archer to haul the borrow excavation, even though Defendant and Archer contracted for said service.

36. Defendant's use of Archer's DBE status in their bid process with the State, while Defendant never intended to use Archer for actual performance of the contract terms, amounts to unfair trade practices pursuant to Chapter 75 of the North Carolina General Statutes.

37. Defendant's repeated breaches of its contract with Archer affects commerce.

38. Defendant's breach of their contract with Archer after using Archer's DBE status to be awarded the contract from NCDOT affects commerce.

39. Defendant's repeated breaches of its contract with Archer offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and is deceptive or has the tendency to be deceptive.

40. Defendant's breach of their contract with Archer after using Archer's DBE status to be awarded the contract with NCDOT offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and is deceptive or has the tendency to be deceptive.

6

41. Due to Defendant's unfair and deceptive trade practices, Archer is entitled to treble damages and attorneys fees.

**WHEREFORE**, Plaintiff prays the Court to grant the following relief:

1. Plaintiff have and recover actual damages from Defendant in an amount in excess of $10,000.00, together with interest as allowed by law;
2. That damages be trebled;
3. That Plaintiff be awarded attorneys fees;
4. For a trial by jury on all issues so triable;
5. The cost of this action be taxed against Defendant; and
6. For such other and further relief as the Court deems just and proper.

THIS THE 3rd DAY OF March, 2006.

HEDRICK EATMAN GARDNER &
KINCHELOE, LLP

By: _____
JEFFREY A. DOYLE
State Bar No. 19916
STACY M. RACE - 719-3713
State Bar No. 31743
Attorneys for Plaintiff Archer
Trucking, Inc.
4011 WestChase Boulevard,
Suite 300
Raleigh, North Carolina 27607
(919) 832-9424

7

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon all counsel of Record by depositing a copy of the same in an official depository of the United States mail in a postage-paid envelope addressed to:

Julian D. Bobbitt, Jr.
P.O. Box 35442
Greensboro, NC
27415
*Registered Agent for Plaintiff*

This the 3rd day of March, 2006.

JEFFREY A. DOYLE
STACY M. RACE

8

STATE OF NORTH CAROLINA

COUNTY OF DURHAM

## VERIFICATION

I, DAVID ARCHER JR. of ARCHER TRUCKING, INC., being first duly sworn, deposes and says that I am a Duly Authorized Agent of ARCHER TRUCKING, INC., Plaintiff, and in such capacity, I have read the foregoing *Complaint* and know the contents thereof, and that the same is true and correct to the best of our knowledge, except as to those matters and things alleged upon information and belief, and, as to those things, we believe them to be true.

ARCHER TRUCKING, INC.

_____
DAVID ARCHER JR.
PRESident (Title)

Sworn to and subscribed before me, this the
17th day of February, 2006.
Nara C. Morris
Notary Public
My Commission Expires: March 13, 2008